1  DANIEL T. LEBEL, SBN 246169
   **CONSUMER LAW PRACTICE**
2  **OF DANIEL T. LEBEL**
   PO Box 720286
3  San Francisco, CA 94172
   *danlebel@consumerlawpractice.com*
4  Tel: (415) 513-1414
   Fax: (877) 563-7848
5
   BRYCE BELL (admitted *pro hac vice*)
6  **BELL LAW, LLC**
   2600 Grand Blvd., Suite 580
7  Kansas City, MO 64108
   T: 816-886-8206
8  F: 816-817-8500
   Bryce@BellLawKC.com
9  MS@BellLawKC.com

10
   [Additional Counsel Listed on Signature Page]
11
   *Attorneys for Plaintiffs and all others similarly situated,*
12

13              **IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF CALIFORNIA**
14

15 | **LORI COLLETT** and | |
   | **ROBERT JACOBS,** | Case No. 3:19-cv-03743-RS |
16 | individually and on behalf of all others | |
   | similarly situated; | **FIRST AMENDED** |
17 | | **CLASS ACTION COMPLAINT** |
   | Plaintiffs, | |
18 | | 1.  Injunctive Relief |
   | v. | 2.  California's Unfair Competition Law |
19 | | (Cal. Bus. & Prof. Code §17200) |
   | **ANCESTRY.COM INC.**, | 3.  California's False Advertising Law |
20 | a corporation, | (Cal. Bus & Prof. Code §17500) |
   | | 4.  Negligence |
21 | | 5.  Breach of Fiduciary Duty |
   | and | 6.  Negligence *Per Se* |
22 | | |
23 | | **DEMAND FOR JURY TRIAL** |

24

25 | **ANCESTRY.COM DNA, LLC**. | |
   | a limited liability company; | |
26 | | |
   |           Defendants. | CLASS ACTION |
27

28

---

**FIRST AMENDED CLASS ACTION COMPLAINT**
1

Plaintiffs Lori Collett and Robert Jacobs, on behalf of themselves and all others similarly situated, sues Ancestry.com Inc. and Ancestry.com DNA, LLC (collectively, "Ancestry") for misleading and deceiving patients in California and across the country about what Ancestry was actually doing with their DNA, and alleges as follows:

**PARTIES**

1. Plaintiff Lori Collett ("Lori") is a resident of San Lorenzo, California.

2. Plaintiff Robert Jacobs is a resident of Los Angeles, California.

3. Defendant Ancestry.com Inc. is a Delaware corporation with its principal place of business in Utah.  Defendant Ancestry.com DNA LLC is a Delaware Limited Liability Company with its principal place of business in Utah. Upon information and belief, the only member of Ancestry.com DNA LLC is Ancestry.com Operations Inc., a Delaware corporation with its principal place of business in Utah.

**JURISDICTION AND VENUE**

4. This Court has personal jurisdiction over the Defendants in that they each solicit business and sales of their services and DNA products in California through a website of alleged California marriage, death, and other family history records.

5. This Court has jurisdiction over this action pursuant to § 410.10 of the California Code of Civil Procedure. Jurisdiction is also proper under California Civil Code § 17200 *et seq.*

6. This action was removed from California Superior Court by Defendants which allege this Court has jurisdiction pursuant to the "Class Action Fairness Act," 28 U.S.C. §§ 1332(d), 1435 ("CAFA"). At least one member of the proposed class is a citizen of a state other than where Defendants are incorporated and headquartered. The proposed class consists of more than 100 members.  Further, Defendants allege that the amount in controversy exceeds $5 million taking into

**FIRST AMENDED CLASS ACTION COMPLAINT**

account all damages and equitable relief on behalf of the proposed class, and excluding interest and costs.

## FACTS COMMON TO ALL COUNTS

7. Defendants are part of the multi-billion-dollar genealogy enterprise. Upon information and belief, Defendants are (directly or indirectly) wholly-owned subsidiaries of Ancestry.com Holdings LLC, which uses the fictitious name (and domain name) Ancestry.com to sell genealogy and DNA products and services throughout the country and across the globe.

8. Defendant Ancestry.com DNA LLC ("AncestryDNA") sells and conducts DNA testing where customers pay a fee to receive genetic results that are then stored in a database and controlled by AncestryDNA.

9. Both Defendants sell genealogical services to the public and California residents through the collection and analysis of DNA and other medical information.

10. Pursuant to Federal and California law, Defendants are health care providers and are required to keep medical information private.

11. As health care providers, Defendants are required to restrict the release of any private health information of its customers and patients.

12. Defendants are a covered entity pursuant to the Health Insurance Portability and Accountability Act ("HIPAA"). *See* 45 C.F.R. § 160.102. Defendants must therefore comply with the HIPAA Privacy Rule and Security Rule. *See* 45 C.F.R. Part 160 and Part 164, Subparts A through E.

13. Defendants are also a covered entity pursuant to the Health Information Technology Act ("HITECH").[1] *See* 42 U.S.C. §17921, 45 C.F.R. § 160.103.

---

[1] HIPAA and HITECH work in tandem to provide guidelines and rules for maintianing protected health information. HITECH references and incorporates HIPAA.

**FIRST AMENDED CLASS ACTION COMPLAINT**
3

14. HIPAA's Privacy Rule, formally titled "Standards for Privacy of Individually Identifiable Health Information," establishes national standards for the protection of health information.

15. HIPAA's Security Rule, formally titled "Security Standards for the Protection of Electronic Protected Health Information," establishes national security standards for the protection of health information that is held or transferred in electronic form. *See* 42 C.F.R. §§ 164.302-164.318.

16. HIPAA limits the permissible uses of "protected health information" and prohibits the unauthorized disclosure of "protected health information." 45 C.F.R. § 164.502. HIPAA requires that covered entities implement appropriate administrative, technical, and physical safeguards for this information from any intentional or unintentional use or disclosure that is in violation of the standards, implementation specifications, or other requirements of this subpart. *See* 45 C.F.R. § 164.530(c).

17. HIPAA requires a covered entity to have and apply appropriate sanctions against members of its workforce who fail to comply with the privacy policies and procedures of the covered entity or the requirements of 45 C.F.R. Part 164, Subparts D or E. *See* 45 C.F.R. § 164.530(e).

18. HIPAA requires a covered entity to mitigate, to the extent practicable, any harmful effect that is known to the covered entity of a use or disclosure of protected health information in violation of its policies and procedures or the requirements of 45 C.F.R. Part 164, Subpart E by the covered entity or its business associate. *See* 45 C.F.R. § 164.530(f).

19. Under HIPAA:

> Protected health information means individually identifiable health information:
> (1) Except as provided in paragraph (2) of this definition, that is:
>     (i) Transmitted by electronic media;
>     (ii) Maintained in electronic media; or

(iii) Transmitted or maintained in any other form or medium.[2]

20. HIPAA and HITECH also obligate (and obligated) Defendants to implement policies and procedures to prevent, detect, contain, and correct violations, and to protect against uses or disclosures of protected health information that are reasonably anticipated but not permitted by the privacy rules. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); *see also* 42 U.S.C. § 17902.

21. HIPAA further obligates (and obligated) Defendants to ensure that its workforce complied with HIPAA security standard rules (*see* 45 C.F.R. § 164.306(a)(4)), to effectively train its workforces on the policies and procedures with respect to protected health information, as necessary and appropriate for those individuals to carry out their functions and maintain the security of protected health information. *See* 45 C.F.R. § 164.530(b)(1).

22. HIPAA also requires the Office of Civil Rights ("OCR") within the United States Department of Health and Human Services ("HHS") to issue annual guidance documents on the provisions in the HIPAA Security Rule. *See* 45 C.F.R. §§ 164.302-164.318. For example, "HHS has developed guidance and tools to assist HIPAA covered entities in identifying and implementing the most cost effective and appropriate administrative, physical, and technical safeguards to protect the confidentiality, integrity, and availability of e-PHI and comply with the risk analysis requirements of the Security Rule." *See* U.S Department of Housing & Human Services, Security Rule Guidance Material.[3] The list of resources includes a link to guidelines set by the National Institute of Standards and Technology ("NIST") which OCR says "represent the industry standard for good practices with respect to standards for securing e-PHI." *See* U.S. Department of Health & Human Services, Guidance on Risk Analysis.[4]

---

[2] 45 C.F.R. § 160.103.

[3] http://www.hhs.gov/hipaa/for-professionals/security/guidance/index.html.

[4] https://www.hhs.gov/hipaa/for-professionals/security/guidance/guidance-risk-analysis/index.html.

**FIRST AMENDED CLASS ACTION COMPLAINT**
5

23. The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, requires HIPAA covered entities and their business associates to provide notification following a breach of unsecured protected health information.

24. As described here, Defendant is and was also obligated by state law to protect Plaintiffs' and putative Class Members' private health information.

25. Pursuant to Federal and California law, Defendants can only release private health information of its customers and patients with an expressed release from its customers and patients.

26. The expressed release from Defendants' customers and patients must contain, in writing, specifically identified individuals or entities to whom the medical information will be released.

27. Defendants are not allowed to release private health information to general, unnamed persons or entities.

28. Defendants both have websites that state Defendants' intended release of medical information as follows:

> Ancestry will not disclose any personal information to third parties except as described below. Third parties acting as our agents who receive personal information from us have committed to confidentiality obligations that are consistent with this Privacy Statement and applicable laws.
>
> *i) To Group Companies:* We may share personal information with our Group Companies so that they may use personal information for the purposes described in this Privacy Statement, to provide the additional services of those Group Companies, and for the purposes of connecting you to users of the other websites operated by the Group Companies. Ancestry is responsible for the management of the jointly-used personal information. The Group Companies are subject to this Privacy Statement or similar privacy statements. Additionally, as our business continues to grow and change, we might restructure, buy, or sell subsidiaries or business units. In these transactions, customer information is often one of the transferred assets, remaining subject to promises made in then prevailing privacy statements, and, accordingly, we may transfer personal information in connection with such transactions. Also, in the event that Ancestry, or substantially all of its assets or stock are acquired, transferred, disposed of (in whole or part and including in connection with any bankruptcy or similar proceedings), personal information will as a matter of course be one of the transferred assets.

**FIRST AMENDED CLASS ACTION COMPLAINT**

*ii) Other users:* On some of the Websites, you can give others permission to view and edit personal information about you. The choice to share your information is at your sole discretion. For example, on Ancestry.com you can choose to invite family or other members of the Ancestry Community to view and edit your family tree. Please click here for more information.

*iii) Service providers:* Under the protection of appropriate agreements that require adherence to confidentiality obligations consistent with this Privacy Statement, we may disclose personal information to service providers we use to perform various tasks for us including for the purposes of data storage, consolidation, retrieval, analysis, or other processing, as well as effective management of customer information and to help us communicate with you. For example, we use vendors to process payments from you and to help manage our Websites and relationships with you. These third parties include affiliated and unaffiliated service providers in the United States, Europe and in other jurisdictions.

*iv) Third-party advertising partners:* We may use third-parties to display or serve advertisements on our behalf on our Websites or elsewhere on the internet. These third parties may set their own cookies, pixel tags, or similar technologies on our Websites to collect information about Users' online activities over time and across different websites and applications in order to make our ads more relevant to you.

*v) Social Networking Services:* We have worked with certain third-party social media providers to offer you their social networking services through our Services. For example, you can log in to the Ancestry.com site using Facebook. Click here to read more. In addition, if you use our mobile applications, we may ask you to connect to your Facebook account – if you agree to do so, we may display and share your Facebook information pursuant to Facebook's Platform Policy. These social networking services may collect, process, and retain information about you, in accordance with applicable law and their own terms of service and/or privacy policies. If you choose to access or make use of third-party social networking services, we may receive information about you that you have made available to those social networking services, including information about your contacts on those social networking services.

Please note: If you click away from our Websites to visit the site of any third party advertiser, sponsor, social media network, or other third party site, you may be asked for your personal information for use of the social media network, or payment card or other personal information in order to purchase or use the products and services that those third parties offer, as applicable. These companies have their own privacy and data collection practices. We have no responsibility or liability for these independent policies. You should therefore review their privacy notices carefully regarding how your information may be used.

*vi) In these additional scenarios:* Ancestry may disclose personal information to third parties in these additional scenarios: (a) with your knowledge and consent; (b) as reasonably necessary to comply with a law, regulation, valid legal process (e.g. subpoenas or warrants served on us) or governmental or regulatory request; (c) as necessary or appropriate to protect the rights, property, safety, confidentiality, or reputation of Ancestry, its Group Companies, or other Users (including outside your

FIRST AMENDED CLASS ACTION COMPLAINT

7

country of residence); (d) to enforce our terms and conditions; (e) to prevent fraud or cybercrime; (f) to permit us to pursue available remedies or limit the damages that we may sustain; or (g) as necessary or appropriate to otherwise address unlawful or harmful activity. If we are going to release your personal information to law enforcement, we will do our best to provide you with notice in advance by email, unless we are prohibited by law from doing so. In addition, we reserve the right to withhold advance notice where it would impede an investigation of identity theft, or in situations involving imminent physical harm or harm to minors.[5]

29. The aforementioned notice of disclosure is insufficient to allow Defendants to release private health information of its patients under applicable law.

30. Although Defendants have modified their disclosures over the years, the disclosures are still inadequate under both California and Federal law.

31. At no time during the process did either Defendant obtain a written authorization from Plaintiffs allowing for the release of their medical information.

32. Defendants released Plaintiffs' and the members of the Class' private health information to unknown persons or entities without express permission to do so from Plaintiffs or other members of the Class.

33. Because of Defendants' conduct, Plaintiffs and other members of the Class have been harmed in that they: (1) paid more for genealogical privacy protections than they otherwise would have; and (2) paid for privacy protections that they did not receive. In this respect, Plaintiffs and members of the Class have not received the benefit of their bargain and have suffered an ascertainable financial loss.

34. Additionally, because of Defendants' conduct, Plaintiffs and members of the Class have been harmed in that Defendants have breached their common law fiduciary duty to Plaintiffs and members of the Class.

---

[5] See http://www.ancestry.com/cs/legal/privacystatement#Disclose . Defendant Ancestry.com DNA LLC provides similar information on its website.

35. On June 5, 2018, Defendants modified their Terms and Conditions.

36. In September of 2018, Defendants updated their ethnicity estimates which resulted in a new set of "results" being made available.

37. Upon information and belief, these results were made available to all putative class members that had previously submitted their DNA to Defendants for ethnicity analysis.

38. On July 25, 2019, after this lawsuit was filed in this Court, Defendants now attempt to change the Terms and Conditions again ("July 25, 2019 Changes").

39. To the extent that the July 25, 2019 Changes are found to be legally binding on either of the Plaintiffs, Plaintiffs hereby elect to opt-out of those changes pursuant to Section 13 of the July 25, 2019 Changes, specifically the "30-Day Right to Opt Out"[6].

40. In addition, to the extent the July 25, 2019 Changes are ever found to be legally binding on any Plaintiff or any putative class member, Plaintiffs exercise their rights on behalf of the putative class to opt-out of the July 25, 2019 Changes pursuant to Section 13, the "30-Day Right to Opt-Out".

## CLASS ACTION ALLEGATIONS

41. Plaintiffs seek to represent a statewide class consisting of:

   **Patients who purchased DNA products from Defendants in the State of California and whose personal information was compromised after purchasing genealogical services from Defendants.**

42. Excluded from this initially-defined putative class are Defendants, any affiliate, parent, employee, and/or subsidiary of Defendant(s); any officer, director, or employee of Defendant(s), anyone employed by counsel for Plaintiffs in this action, and any Judge to whom this is assigned as well as his or her immediate family.

---

[6] See https://www.ancestry.com/cs/legal/termsandconditions. Last checked August 12, 2019.

**FIRST AMENDED CLASS ACTION COMPLAINT**
9

43. Defendants have acted and refused to act on grounds generally applicable to the class.

44. The disposition of Plaintiffs' claims in a class action will benefit both the parties and the Court, because Plaintiffs' claims are identical to those of the proposed class and claims and defenses concerning the representative party are identical.

45. Upon information and belief, there are thousands, if not hundreds of thousands of members of the putative class, which would make individual joinder impracticable. The precise number of class members and their addresses can be obtained from information and records in Defendants' possession and control.

46. There are common questions of fact and law as to all class members which predominate over questions which would affect only individual members. These common legal and factual questions include the following:

   a. Whether Defendants' committed the violations alleged herein;

   b. Whether Defendants breached their fiduciary duties to Plaintiffs and the Class;

   c. Whether Plaintiffs and the Class members are entitled to equitable relief, including declaratory relief, restitution, rescission, a preliminary and/or permanent injunction;

   d. Whether, and in what amount, Plaintiffs and the Class members are entitled to damages; and

   e. Whether, and in what amount, Plaintiffs and the Class members are entitled to punitive damages.

47. The claims brought by Plaintiffs are typical of the claims of the putative class because Plaintiffs and the Class sustained the similar, if not the same, injuries as a result of Defendants' uniform conduct. Further, the legal claims alleged by Plaintiffs arise from the same conduct that gives rise to the claims of the putative Class.

48. Plaintiffs will fairly and adequately protect the interests of the putative Class members. Further, Plaintiffs have retained counsel competent and experienced in complex litigation such as this. Plaintiffs will prosecute this action vigorously on behalf of the putative class member, and has no interests adverse and/or antagonistic to those of the putative Class.

49. This putative class is superior to all other means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are small compared with the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for the Class members, on an individual basis, to obtain effective redress for the wrongs done them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

50. As a result a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Proper and sufficient notice of this action may be provided to the class members using contact information maintained by Defendants.

51. Plaintiffs and the members of the class have suffered irreparable harm and damages as a result of Defendants' wrongful conduct as alleged herein. Absent a representative action, Plaintiffs and the members of the class will continue to suffer losses, thereby allowing these violations of law to proceed without remedy.

52. In the alternative, Plaintiffs asserts that an Injunctive Relief class would be proper in that Defendants have acted and/or refused to act on grounds generally applicable to the Class, making appropriate final and injunctive relief with respect to the Class members as a whole.

## COUNT I:
## INJUNCTIVE RELIEF

53. Plaintiffs incorporate by reference all facts and allegations contained in the foregoing paragraphs as though fully set forth herein.

54. Defendants have a longstanding practice of failing to obtain legally sufficient informed consent agreements and/or other proper disclosures, as required by California and Federal law(s) from patients providing Defendants with medical and DNA information.

55. Defendants' failure to provide sufficient informed consent agreements and/or other proper disclosures have violated and continue to violate California and Federal laws.

56. Upon information belief, Defendants also fail to provide sufficient back-end disclosures to the third-parties it shares medical, genetic and/or DNA information with.

57. Defendants' unlawful practices continue to this day and have damaged (and are damaging) Plaintiffs and the putative Class members.

58. Accordingly, Plaintiffs and the putative Class members are entitled to an injunction reasonably calculated to end Defendants' unlawful practices.

## COUNT II:
## VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW
## California Business & Professions Code § 17200, et seq.

59. Plaintiffs incorporate by reference all facts and allegations contained in the foregoing paragraphs as though fully set forth herein.

60. Section 17200 of the California Business & Professions Code ("UCL") prohibits any unlawful, unfair, and/or fraudulent business practice.

61. Defendants violated the "unlawful" prong of the UCL by failing to implement measures to clearly identify the person(s) and/or entity(ies) to whom the personal and DNA data would be released and to clearly identify what specific information would be released.

62. Defendants violated the "unfair" prong of the UCL by failing to obtain written authorizations from Plaintiffs and the putative Class specifically identifying the person(s) and/or entity(ies) to whom Defendants intended to release the personal and DNA data.

63. Further, Defendants willfully breached their fiduciary duty of confidentiality, pursuant the Health Insurance Portability and Accountability Act ("HIPAA") Privacy Rule, including but not limited to 45 C.F.R. 160.103 and 45 C.F.R. 164.530.

64. Defendants breached the fiduciary duty of confidentiality by failing to protect the personal and DNA data of Plaintiffs and the putative Class.

65. Defendants violated the "fraudulent" prong of the UCL by representing, impliedly and/or expressly, that they would protect the privacy of the personal and DNA data of Plaintiffs and the putative Class.

66. As a direct and proximate result of Defendants' unfair, unlawful, and fraudulent conduct, Plaintiffs and the putative class members have been damaged to their money and/or property.

## COUNT III:
## FALSE ADVERTISING, BUSINESS AND PROFESSIONS CODE
## California Business & Professions Code § 17500, et seq.

67. Plaintiffs incorporate by reference all facts and allegations contained in the foregoing paragraphs as though fully set forth herein.

68. Defendants made representations, impliedly and/or expressly, to Plaintiffs, those similarly situated, and to the general public, that their personal and DNA data would be inadequately secured.

69. Defendants deceptively failed to inform Plaintiffs, and those similarly situated, that their personal and DNA data would be inadequately secured.

70. In light if the industry Defendants operate in, the security of personal and DNA data is clearly a material fact.

71. As outlined herein, Defendants did not, and do not, adequately secure that personal and DNA data.

72. Defendants' acts and omissions were likely to deceive the general public.

73. The only motive Defendants had for this deception was (and is) to increase profits; and that is exactly *why* Defendants engaged in these violations.  Accordingly, Defendants have engaged in false advertising as defined by Cal. Business & Professions Code § 17500, *et seq.*

74. These practices, which Defendants used—and continue to use—to their significant financial gain also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors and result in injury to Plaintiffs, the putative Class, and the general public.

75. Plaintiffs seek, individually and on behalf of the putative Class, full restitution.

76. Plaintiffs and the putative Class are further entitled, and do seek, a declaration that the above-described practices constitute false, misleading, and deceptive advertising.

77. As a direct and proximate result of such actions, Plaintiffs and the putative Class have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of Defendants' false, deceptive, and misleading advertising in an amount to be decided by jury.

### COUNT IV: NEGLIGENCE

78. Plaintiffs incorporate by reference all facts and allegations contained in the foregoing paragraphs as though fully set forth herein.

79. Defendants had (and have) an obligation to exercise reasonable care to protect and ensure the privacy of Plaintiffs and the putative class members' personal and DNA data.

80. This duty included creating and implementing procedures to secure the personal data of Plaintiffs and the Class.

81. Additional, Defendants owed a duty to Plaintiffs and the Class to notify them that their sensitive personal information had been compromised.

82. As described, it was foreseeable that Defendants would release information to third parties without customers' and patients' expressed authorization.

83. Nonetheless, Defendants breached their duty to exercise reasonable care in protecting the personal information of Plaintiffs and the Class by (1) failing to implement security measures to protect the information of Plaintiffs and the Class; (2) failing to implement measures to obtain express authorization from customers and patients for the release of medical records and personal information; (3) failing to implement security measures which would protect the medical records from the unauthorized release of information; and (4) failing to timely notify Plaintiffs and the Class about the breach of their records.

84. By selling that data without proper disclosure, Defendants breached their obligation.

85. As a direct and proximate result of Defendants' actions, Plaintiffs and the putative class members have been damaged.

### COUNT V
### BREACH OF FIDUCIARY DUTY

86. Plaintiffs incorporate by reference all facts and allegations contained in the foregoing paragraphs as though fully set fort herein.

87. Under California common law, Defendants owed and continue to owe a fiduciary duty of confidentiality to Plaintiffs and the putative Class Members to maintain the privacy of their medical records and medical information contained therein.

88. California's fiduciary duty of confidentiality is explicated under the procedures set forth in the HIPAA Privacy Rule and HITECH Act, including, without limitation, the procedures

and definitions of 45 C.F.R. § 160.103 and 45 C.F.R. § 164.530 which require a covered entity to apply appropriate administrative, technical, and physical safeguards to protect the privacy of patient records.

89. Under its fiduciary duty, Defendants must institute safeguards to protect the privacy and security of their patients' medical records and the medical information contained in those records.

90. Defendants breached their fiduciary duty to Plaintiffs and the putative Class Members by failing to institute these safeguards and protect the privacy and security of their patients' records and the medical information contained in those records.

91. As a direct result of Defendants' breach of their fiduciary duty of confidentiality and the wrongful disclosure of their patients' confidential information, Plaintiffs and the putative Class have suffered damages and injuries, including, without limitation, loss of benefit of their bargain (to the extent a contract was formed), a reduction in value of their private health information, loss of privacy, loss of confidentiality, embarrassment, humiliation, emotional distress, and loss of enjoyment of life.

92. As a direct result of Defendants' breach of their fiduciary duty of confidentiality and privacy and the disclosure of Plaintiffs' and the putative Class Members' confidential medical information, Plaintiffs and the putative Class Members have a significantly increased risk of being future victims of identity theft relative to what would be the case in the absence of Defendants' wrongful acts.

93. As a direct result of Defendants' breach of their fiduciary duty of confidentiality and privacy and the disclosure of Plaintiffs and the putative Class Members' confidential medical information, future monitoring in the form of identity theft or related identity protection is necessary

in order to properly warn Plaintiffs and the putative Class Members of, and/or protect them from, being victims of identity theft and/or other identity-related crimes.

## COUNT VI
## NEGLIGENCE *PER SE*

94. Plaintiffs incorporate by reference all facts and allegations contained in the foregoing paragraphs as though fully set forth herein.

95. Plaintiffs and the putative Class Members maintained private protected health information with Defendants.

96. Defendants are each a covered entity for the purposes of HIPAA and HITECH.

97. Plaintiffs and the putative Class Members are all members of the class of people which HIPAA and HITECH were created to protect.

98. Plaintiffs and the putative Class Members' private health information are the type of information HIPAA and HITECH were created to protect.

99. HIPAA and HITECH were created to protect against the wrongful and unauthorized disclosure of an individual's health information.

100. Defendants gave protected medical information to an unauthorized third party or unauthorized third parties without the written consent or authorization of Plaintiffs or the putative Class Members.

101. The information disclosed and/or released to an unauthorized third party or unauthorized third parties included private health information.

102. Defendants' disclosure and/or release of the private health information of Plaintiffs and the putative Class Members without consent or authorization is a violation of HIPAA and HITECH, and is negligence *per se*.

103. Alternatively, Defendants violated HIPAA and HITECH in that they did not reasonably safeguard the private information of Plaintiffs and the putative Class Members from any inten-

tional or unintentional use or disclosure that is in violation of the standards, implementation specifications, or other requirements pursuant to HIPAA and HITECH including, but not limited to, 42 C.F.R. §§ 164.302-164.318, 45 C.F.R. § 164.500, *et seq.*, at 42 U.S.C. § 17902, at was therefore negligence *per se*.

104. As a direct result of Defendants' negligence, Plaintiffs and the putative Class Members suffered damages and injuries, including, without limitation, loss of the benefit of their bargin (to the extent a contract was actually formed), a reduction in value of their private health information, loss of privacy, loss of confidentiality, embarrassment, humiliation, emotional distress, and loss of enjoyment of life.

105. As a direct result of Defendants' negligence, Plaintiffs and the putative Class Member shave a significantly increased risk of being future victims of identity theft relative to what would be the case in the absence of Defendants' wrongful acts.

106. As a direct result of Defendants' negligence, future monitoring, in the form of identity theft or related identity protection is necessary in order to properly warn Plaintiffs and the putative Class Members of, and/or protect them from, being victims of identity theft or other identity-related crimes.

## **PRAYER FOR RELIEF**

Plaintiffs, individually and on behalf of those similarly situated, requests that the Court order relief and enter judgment against Defendants as follows:

1. Approving of the Class, certifying Plaintiffs as representative of the Class and designating their counsel as counsel for the Class;

2. Declaring that Defendants committed the violations alleged herein;

3. Granting damages, restitution, and/or disgorgement to Plaintiffs and the Class;

4. Granting compensatory damages, the amount of which is to be determined by jury at trial;

5. Granting punitive damages;

6. Granting pre- and post-judgment interest;

7. Granting attorneys' fees and costs;

8. Granting Injunctive and/or Declaratory Relief; and

9. Granting further relief as this Court may deem proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, individually and on behalf of the proposed Class, hereby demands a trial by jury on all issues so triable.

Dated: August 12, 2019

Respectfully submitted,

                                         **CONSUMER LAW PRACTICE**
                                         **OF DANIEL T. LEBEL**

                                         */s/ Daniel T. LeBel*

                                         Daniel T. LeBel
                                         *danlebel@consumerlawpractice.com*
                                         PO Box 720286
                                         San Francisco, CA 94172
                                         Telephone: (415) 513-1414
                                         Fascimile: (877) 563-7848

| | |
|---|---|
| A. SCOTT WADDELL | PAUL "PABLO" H. MOSE |
| **WADDELL LAW FIRM LLC** | **REBEIN BROTHERS, PA** |
| 2600 Grand Blvd., Suite 580 | 810 Frontview |
| Kansas City, MO 64108 | Dodge City, KS 67801 |
| T: 816-914-5365 | T: 620-227-8126 |
| F: 816-817-8500 | T: 913-432-4464620-227-8451 |
| scott@aswlawfirm.com | pablo@rb3r.com |
| *(to be admitted pro hac vice)* | *(to be admitted pro hac vice)* |

---

FIRST AMENDED CLASS ACTION COMPLAINT

19

| | | |
|---|---|---|
| 1 | MAUREEN M. BRADY | BRYCE B. BELL |
| 2 | **MCSHANE BRADY** | **BELL LAW, LLC** |
|   | 1656 Washington Street, Suite 120 | 2600 Grand Blvd., Suite 580 |
| 3 | Kansas City, MO 64108 | Kansas City, MO 64108 |
|   | T: 816-888-8010 | T: 816-886-8206 |
| 4 | F: 816-332-6295 | F: 816-817-8500 |
|   | mbrady@mcshanebradylaw.com | Bryce@BellLawKC.com |
| 5 | (*to be admitted pro hac vice*) | (*admitted pro hac vice*) |

*Counsel for Plaintiffs and the Proposed Class*

---

**FIRST AMENDED CLASS ACTION COMPLAINT**
20