United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LORI COLLETT, et al.,
Plaintiffs,
v.
ANCESTRY.COM DNA LLC, et al.,
Defendants.

Case No. 19-cv-03743-RS

**ORDER GRANTING MOTION TO COMPEL ARBITRATION**

## I. INTRODUCTION

Plaintiffs Lori Collett and Robert Jacobs allege that defendants Ancestry.com Inc. and Ancestry.com DNA LLC (collectively, "Ancestry") released their private health information to third parties without their consent. They assert numerous violations of California's Unfair Competition and False Advertising Laws, as well as common law. Ancestry now moves, pursuant to 9 U.S.C. § 4, to compel arbitration of the claims. For the reasons below, Ancestry's motion is granted.

## II. BACKGROUND

### A. Factual Background

Ancestry is a company that sells genealogy tools and DNA testing kits to customers around the world. Plaintiffs both created accounts with Ancestry, Collett on May 4, 2015 and Jacobs on May 2, 2013, and used Ancestry's tools and services. On April 24, 2019, plaintiffs filed the complaint in this case on behalf of a putative class, alleging that Ancestry released private health information to third parties in violation California and common law. Ancestry removed the

United States District Court
Northern District of California

complaint to federal court pursuant to the Class Action Fairness Act. On August 12, 2019, plaintiffs amended the complaint to allege additional common law violations.

**B. Contractual History**

In order to use Ancestry's services, plaintiffs each registered for Ancestry accounts at the Ancestry.com website. They provided their names and email addresses, created passwords, and accepted Ancestry's Terms and Conditions ("Terms"). A provision allowed Ancestry to modify unilaterally the Terms at any point and provide notice to its users via email or a banner on the website; continued use of Ancestry's product after being notified of a change in the terms would constitute acceptance of the updated Terms.

Ancestry updated its Terms on August 1, 2014; March 17, 2015; December 14, 2017; and June 5, 2018. Each of those versions of the Terms contained a provision requiring binding arbitration of most disputes according to the American Arbitration Association's ("AAA") rules. [1] Each version also explained that no changes to the Terms would be applied retroactively—except the binding arbitration provision, which would survive termination of the agreement.[2]

On July 25, 2019, after this case had been filed, Ancestry updated its Terms yet again ("2019 Terms"). Unlike prior versions, the 2019 Terms explicitly provided that an arbitrator, "not any federal, state, or local court or agency" would decide "whether a claim is subject to arbitration"—that is, the threshold decision of whether a dispute should be adjudicated by an arbitrator or a court was explicitly delegated to an arbitrator. The 2019 Terms also provided that the JAMS Streamlined Arbitration Procedure Rules ("JAMS Rules") instead of the AAA Rules would be used to arbitrate any dispute between Ancestry and its customers.

[1] There were three limited exceptions to the binding arbitration requirement. Neither party contends that those exceptions apply to this case.

[2] Every version of the Terms also required customers "to first try to resolve the dispute informally by contacting us." Plaintiffs make no mention of this procedural mechanism. However, given the privacy-related nature of the claims, and the fact that this dispute has now made its way to federal court, it is doubtful that this matter will be easily resolved via Ancestry's internal dispute resolution process.

United States District Court
Northern District of California

Finally, the 2019 Terms contained an opt-out provision.[3] That provision gave customers the ability to "opt out and not be bound by the arbitration and class action waiver provisions set forth above," provided they did so within thirty days of their "first use of the services or the effective date of the first set of Terms containing an Arbitration and Class Action Waiver section, whichever is later." Collett and Jacobs both purported to opt-out of the arbitration provision contained in the 2019 Terms by sending emails to Ancestry on August 21, 2019 and August 22, 2019 respectively.

## III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to any "contract evidencing a transaction involving commerce." 9 U.S.C. § 2; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). It provides that any contract within its scope "'shall be valid, irrevocable, and enforceable,' ... and permits a party 'aggrieved by the alleged ... refusal of another to arbitrate' to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement." *Chiron*, 207 F.3d at 1130 (quoting 9 U.S.C. § 4) (second omission in original). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The role of a district court under the FAA "is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron*, 207 F.3d at 1130 (citations omitted). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id.* "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

---

[3] Curiously, the Terms currently available on Ancestry's website contain no mention of this opt-out provision.

United States District Court
Northern District of California

The presumption in favor of arbitration is, however, reversed for delegation provisions. "[A] delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). Because arbitrators deciding the scope of their own jurisdiction could interfere with "the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration," *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995), courts should only find that the parties agreed to delegate the issue of arbitrability if there is clear and unmistakable evidence of that agreement, *id.* at 944. *See also AT&T Techs., Inc. v. Commcn's Workers*, 475 U.S. 643, 649 (1986).

## IV. DISCUSSION

### A. The Delegation Question Depends on Which Terms Apply

Before addressing the merits of the plaintiffs' claims, or whether the claims are subject to arbitration, it is first necessary to decide *who* should decide whether the claims are subject to arbitration. *See First Options of Chicago*, 514 U.S. at 942. This final question, also known as "delegation," turns on which version of the Ancestry Terms apply to the claims in this case.

The parties do not dispute that both Plaintiffs affirmatively agreed to the Terms when they registered their accounts, and that both assented to subsequent Terms updates by continuing to use the Services after being notified of the updates. The parties also agree that each version of the Terms before the 2019 Terms mandated that most disputes be settled via arbitration according to AAA's rules. AAA Rule 14(a) delegates to an arbitrator "the power to rule on … the arbitrability of any claim or counterclaim." Thus, the agreement in each pre-2019 version of the Terms to use the AAA Rules is "clear and unmistakable evidence" that the parties agreed an arbitrator, not a court, should decide issues of arbitrability. *See Cordas v. Uber Tech., Inc.*, 228 F. Supp. 3d 985, 991-92 (N.D. Cal. 2017) (finding that incorporation of the AAA rules delegated issues of arbitrability to the arbitrator). Under the 2019 Terms, the parties explicitly agreed that an arbitrator would decide issues of arbitrability. Under any version of the Terms, then, there is "clear and unmistakable evidence" that the parties, agreed that an arbitrator is to decide whether a

claim is subject to arbitration.

However, if the 2019 Terms govern, and plaintiffs successfully opted out of its arbitration provision, then plaintiffs are not bound to have an arbitrator make the threshold delegation determination or adjudicate the merits of their claims. Thus, if it is determined that the 2019 Terms apply, it will then be necessary to determine whether the plaintiffs successfully opted out. If the answer to both of these questions is "yes," then the present Motion to Compel Arbitration must fail—but if the answer to either is "no," the arbitrability question must itself go to an arbitrator.

**B. An Arbitrator Must Decide Which Terms Apply**

Ancestry seeks to enforce arbitration under any of the pre-2019 Terms, while plaintiffs contend that only the 2019 Terms apply. Plaintiffs argue that the 2019 Terms supersede all previous versions of the Terms, giving the previous arbitration agreements no bearing, and leaving the court with the jurisdiction to decide the validity of the purported opt out. They point to the fact that the 2019 Terms contain language deeming it to be "the entire agreement" and that it "supersede(s) any prior agreements we may have relating to the Services." However, the 2019 Terms also state that "material changes will not apply retroactively," and all pre-2019 versions of the Terms note that the arbitration agreement section "shall survive termination of this Agreement."

The 2019 Terms provide clear and unmistakable guidance about this question: "all disputes arising out of or relating to the interpretation" of the Terms are to be decided by an arbitrator. [4] Similarly, each of the pre-2019 Terms incorporates the AAA Rules, which delegate to the arbitrator the power to rule on the "validity of the arbitration agreement." AAA Consumer Arbitration Rule 14(a). *Cf. Johnson v. Oracle Am., Inc.*, 2017 WL 8793341, at *8 (N.D. Cal. Nov. 17, 2017) (finding that a dispute about whether a new arbitration agreement supersedes the

[4] If the delegation language in the 2019 Terms is in any way ambiguous, the 2019 Terms also adopt the JAMS Rules, which state that "[t]he [a]rbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." JAMS Rule 8(b).

original one should be decided by an arbitrator per the incorporated JAMS rules). Thus, the question of which version of the Terms governs this dispute must be delegated to an arbitrator.

**C. An Arbitrator Must Decide Whether Plaintiffs Opted Out of 2019 Terms**

If an arbitrator does decide that the 2019 Terms apply, the next question is whether the Plaintiff's purported opt-out of the arbitration agreement (and the nested delegation clause), were successful. Plaintiffs argue that that a court must decide whether their purported opt-outs were effective because the FAA does not require arbitration when there is dispute as to the formation of a contract. *See Chiron*, 207 F.3d at 1130. Plaintiffs would instead apply the "clear[] and unmistakabl[e]" standard applicable to gateway issues of arbitrability. *First Options of Chicago*, 514 U.S. at 943.

However, whether plaintiffs successfully opted out of the contract is an issue of contract termination, not formation. Plaintiffs are not arguing that the 2019 Terms do not constitute a validly formed contract between the parties; in fact, they rely on the valid formation of that contract to be able to take advantage of the opt-out provision in the first place. Plaintiffs are rather arguing that they successfully terminated the validity of one part, i.e. the arbitration provision, of their validly formed contract with Ancestry, i.e. the 2019 Terms. Issues of termination, unlike issues of formation, fall outside the scope of the district court's jurisdiction under the FAA. *See Ahlstrom v. DHI Mortg. Co. GP, Inc.*, 2018 WL 6268876, at *3 (N.D. Cal. Nov. 30, 2018) (rejecting the argument that an arbitration opt-out attempt is a question of contract formation for the court and instead delegating the issue to an arbitrator). Thus, an arbitrator, not a court, must decide whether the opt-out was valid.

**V. CONCLUSION**

For the foregoing reasons, Ancestry's motion to compel arbitration is granted. An arbitrator must decide which Terms should apply to the claims at issue in this case, and, if the 2019 Terms apply, whether Plaintiffs successfully opted out of them. The case is stayed pending completion of the arbitration. The Clerk is directed to close the file for administrative purposes. It may be reopened for such additional proceedings as may be appropriate and necessary upon



United States District Court
Northern District of California

conclusion of the arbitration.

**IT IS SO ORDERED**.

Dated: December 19, 2019

RICHARD SEEBORG
United States District Judge

United States District Court
Northern District of California